IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII MASONS' PENSION TRUST FUND; HAWAII MASONS' AND PLASTERERS' ANNUITY TRUST FUND; HAWAII MASONS' VACATION AND HOLIDAY TRUST FUND; HAWAII MASONS' AND PLASTERERS' APPRENTICESHIP AND TRAINING TRUST FUND; HAWAII MASONS' HEALTH AND WELFARE TRUST FUND,<br><br>        Plaintiffs,<br><br>        vs.<br><br>GLOBAL STONE HAWAII, INC.; RENATO FUCHS; DANIEL NELSON; JOHN DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL AGENCIES 1-10; DOE TRUSTS 1-10,<br><br>        Defendants. | Civ. No. 17-00289 SOM-RLP<br><br>ORDER GRANTING DEFENDANTS RENATO FUCHS AND DANIEL NELSON'S MOTION TO DISMISS; DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES; AND GRANTING PLAINTIFF HAWAII MASONS' REQUEST FOR LEAVE TO AMEND. |

**ORDER GRANTING DEFENDANTS RENATO FUCHS AND DANIEL NELSON'S MOTION TO DISMISS; DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES; AND GRANTING PLAINTIFF HAWAII MASONS' REQUEST FOR LEAVE TO AMEND.**

## I.        INTRODUCTION.

        A group of trust funds ("Hawaii Masons") alleges that

Defendant Global Stone Hawaii, Inc. ("Global Stone"), and two of

its officers (Defendants Renato Fuchs and Daniel Nelson)

violated the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001 *et. seq.* ("ERISA"), by failing to make certain

contributions to the funds.  Fuchs and Nelson move to dismiss.

Hawaii Masons seeks to recover from Fuchs and Nelson in their

individual capacities, asserting claims for breach of fiduciary duty, alter ego liability, and constructive trust. Fuchs and Nelson respond that Hawaii Masons' allegations fail as a matter of law, are devoid of factual detail, and are merely conclusory. The court agrees with Fuchs and Nelson and grants the motion to dismiss.

## II.      BACKGROUND.

### A.   The Complaint.

Hawaii Masons is the trustee of various trust funds maintained on behalf of Hawaii construction workers (the "Trust Funds"): Hawaii Masons' Pension Trust Fund; Hawaii Masons and Plasterers' Annuity Trust Fund; Hawaii Masons' Vacation and Holiday Trust Fund; Hawaii Masons' and Plasterers' Apprenticeship and Training Trust Fund; and Hawaii Masons' Health and Welfare Trust Fund. ECF 1, PageID # 1. The Trust Funds are jointly trusteed labor-management trust funds maintained under 29 U.S.C. § 186(c)(5) that operate as employee benefit plans. ECF 1, PageID # 3. Hawaii Masons is a fiduciary under ERISA with respect to the Trust Funds. *Id.* at PageID #s 2, 3. Hawaii Masons' principal offices are in Honolulu, Hawaii. *Id.* at PageID # 3.

On June 15, 2017, Hawaii Masons filed a Complaint against Global Stone, Fuchs, and Nelson. *Id.* at PageID #s 1-2.

The Complaint states that at all relevant times Global Stone was a Hawaii corporation engaged in an industry affecting commerce under ERISA and the Labor-Management Relations Act ("LRMA"). *See id.* at PageID # 4 (citing 29 U.S.C. §§ 1002(5), (11), (12), and 29 U.S.C. § 142(1), (3)). The Complaint alleges that Global Stone agreed to abide by the terms of a Master Agreement Covering the Ceramic Tile, Marble & Terrazzo Trades in the State of Hawaii (the "CBA") and a Declaration of Trust Agreement connected to each Trust Fund (the "Trust Agreements"). *Id.* at PageID # 5. The Complaint states that Hawaii Masons is a third-party beneficiary of the CBA. *Id.* Under the CBA and the Trust Agreements, Global Stone allegedly promised to make monthly contributions to the Trust Funds for employee benefits and for labor performed by covered employees, and to pay liquidated damages in the event of any delinquency. *Id.* at PageID # 7. Global Stone's payment obligations are allegedly ongoing. *Id.* at PageID #s 7-8.

According to the Complaint, Global Stone failed to pay the full contribution amounts from April 2016 to April 2017. *Id.* at PageID # 7. Global Stone also allegedly failed to pay liquidated damages from August 2012 to October 2012, January 2013 to January 2015, and November 2016 to February 2017. *Id.* Hawaii Masons seeks to recover the unpaid funds, accrued

interest, damages flowing from the nonpayments, and costs and attorneys' fees. *Id.* at PageID #s 8, 14.

Fuchs and Nelson are officers of Global Stone and Utah residents. *Id.* at PageID # 4; *see also* ECF 15-2, PageID # 68. The Complaint asserts three claims against them: breach of fiduciary duty, constructive trust, and alter ego liability.

First, the Complaint alleges that "due to breach of fiduciary duties," Fuchs and Nelson "should be held personally liable for . . . delinquent contributions and sums owed" by Global Stone under the CBA and Trust Agreements. ECF 1, PageID # 10. To support this claim, the Complaint makes the following specific allegations:

1. "[Fuchs and/or Nelson] is a fiduciary under ERISA because s/he exercised authority or control respecting management or disposition of plan assets." *Id.*

2. "The trust fund contributions were and are plan assets at all relevant times as the payment of contributions due from Global Stone to the Trust Funds accrued and w[ere] considered as being held in trust by Global Stone for the benefit of the Trust Funds to whom such contributions are due and payable." *Id.* (emphasis omitted).

3. "[Fuchs and/or Nelson] breached his/her fiduciary

     duties by intentionally failing to report and/or pay

     the required contributions to Trust Funds and

     failing to discharge his duties as set forth by

     ERISA and 29 U.S.C. § 1104(a)."  *Id.* at PageID # 11.

The Complaint includes no further factual allegations regarding
the breach of fiduciary duty claim.  *See id.*

     Second, the Complaint requests that a "constructive
trust . . . be imposed upon the assets of" Fuchs, Nelson, and
Global Stone.  *Id.* at PageID # 12; *see also id.* at PageID # 15.
To support this request, the Complaint makes a single
allegation: "As a result of" Fuchs and Nelson's "breach of their
fiduciary duties of care and loyalty to the participants and
beneficiaries of Trust Funds as alleged herein, plan assets have
been improperly diverted from Trust Funds to Global Stone
and/or" Fuchs and Nelson.  *Id.* at PageID # 11; *see also id.* at
PageID # 14 (reiterating the allegation that contribution
amounts "have been improperly diverted from Plaintiffs to Global
Stone and/or" Fuchs and Nelson (emphasis omitted)).

     Third, the Complaint claims that "at all relevant
times, Global Stone was the alter ego and/or the mere
instrumentality of [Fuchs and Nelson]."  *Id.* at PageID # 12.
The Complaint asserts alter ego liability "based on all or some
of the following relevant factors":

a) Undercapitalization
b) Failure to observe corporate formalities
c) Absence of corporate records
d) Insolvency of corporation at time of transaction
e) Siphoning off of funds by the dominant shareholder(s)
f) Shareholders guarantying [sic] corporate liabilities in their individual capacities
g) Nonfunctioning officers or directors
h) Lack of officers or directors
i) Failure to issue stock
j) Absence of consideration for stock
k) Corporation is a facade of the operation of the dominant shareholder(s)
l) Corporation's inability to meet payroll and other obligations
m) Commingling of funds or assets
n) Stripping the corporation of assets in anticipation of litigation
o) Use of the corporate shell to advance purely personal ends
p) Treatment of corporate assets as personal assets
q) Cash advances to shareholders/officers/directors
r) Advances to corporation by shareholders
s) Undocumented loans
t) Use of individual rather than corporate checks and
u) Fraud and misrepresentation with respect to Trust Fund plan assets of which [Fuchs and/or Nelson] was a fiduciary for the employees covered by the Bargaining Agreement and trust agreements.

*Id.* at PageID #s 12-13.

The Complaint asserts that, with Global Stone as their alter ago and "instrumentality," Defendants Fuchs and Nelson "should be held liable for all the judgments entered in favor of

[Hawaii Masons] and/or delinquent contributions or sums owed" under the CBA and Trust Agreements "as a matter of equity and fairness." *Id.* at PageID # 13. The Complaint supports this assertion with another list of "factors," "all or some" of which are allegedly "relevant":

> a) Nonpayment of trust fund obligations by Global Stone;
> b) Violation of statute or public policy;
> c) Misrepresentations by Global Stone and/or members/officers/directors; and/or
> d) The acting principals of Global Stone[] were responsible for and ratified administrative decisions exercised on behalf of Global Stone, were vested with the authority to exercise discretionary control over the management of the financial responsibilities and business affairs of GLOBAL STONE, and exercised discretionary control over the management of the financial responsibilities and business affairs of GLOBAL STONE including, but not limited to, authorizing and tendering the payment of contributions and withholdings due to the funds pursuant to the Bargaining Agreement and trust fund agreements; and/or
> e) The acting principals of Global Stone intentionally misrepresented to Trust Funds the amount of hours worked by its employees by failing to report and/or transmit contributions in a timely fashion to Trust Funds.

*Id.* at PageID # 14 (emphases omitted). The Complaint includes no further factual allegations concerning any of these "factors." *See id.*

## B.    Fuchs and Nelson's Motion to Dismiss.

On September 20, 2017, Fuchs and Nelson moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF 15.  Defendants say that the claims against them are deficient because they are "merely conclusory," lack "factual allegations," and "are not supported by current law." ECF 15-2, PageID # 68.  They point to Ninth Circuit cases that they characterize as holding that "officers of employers are not personally liable when the employer fails to make contributions to ERISA plans."  *Id.* at PageID # 69; *see, e.g.*, *Bos (I) v. Board of Trustees*, 795 F.3d 1006, 1009 (9th Cir. 2015) (noting the rule that officers are not liable for company nonpayments because "unpaid contributions by employers to employee benefit funds are not *plan assets*" covered by ERISA (emphasis added)).

## C.    Hawaii Masons' Memorandum in Opposition.

On October 6, 2017, Hawaii Masons filed a Memorandum in Opposition to the Motion to Dismiss ("Memorandum").  ECF 17. The Memorandum disputes the claim that unpaid employer contributions are not "plan assets" governed by ERISA, and appends the CBA and some of the Trust Agreements that were referenced in the Complaint.  *See* ECF 17-10, PageID # 136; ECF 17-11, PageID # 262; ECF 17-12, PageID # 302.  Hawaii Masons says that these Agreements evince the intent of the parties to deem unpaid contributions to be "plan assets."  *See* ECF 17,

PageID #s 93, 107.  The Memorandum excerpts the following provisions:

1. "Contractor payments to the various Trust Funds and other Funds[,] as specified in this Agreement *shall be paid* only for hours worked."  *Id.* at PageID # 96.

2. "Each Contractor *shall participate* in the Hawaii Masons Health and Welfare Trust Fund . . . ."  *Id.*

3. "Contractor contributions to the various Funds as specified and provided for above *shall be paid* or postmarked by the 20th day of the month . . . ."  *Id.*

4. "[T]he parties have agreed that such contributions *shall be payable* to and deposited in the Masons' Health and Welfare Fund . . . ."  *Id.* at PageID # 97.

5. "The Masons' Welfare Fund *shall* consist of *all* contributions, investments made and held by the Trustees, income from said investments, and any other property received and held by the Trustees to carry out the purposes herein."  *Id.*

6. "Each Employer *shall pay* contributions to the Hawaii Masons' Welfare Fund in accord with the terms of the Labor Agreement."  *Id.* at PageID # 98.

7. "Every Employer who participates in the Masons'
   Welfare Fund *shall* be bound by this Agreement and
   Declaration of Trust." *Id.*

In the Memorandum, Hawaii Masons also alleges, for the
first time, that "Defendants" "are in possession" of assets
"which were actually paid to the Training Fund."[1]  *Id.* at PageID
#s 99, 112 (citing Affidavit of Karen Tamashiro).  Hawaii Masons
argues that because "the sum was in fact once paid over to the
Training Fund," "at a minimum, such sum now held by Defendants
should be considered plan assets, giving rise to a fiduciary
duty."  *Id.* at PageID # 113.  Consequently, Hawaii Masons
claims, the "Individual Defendants"--i.e., Fuchs and Nelson--
must be liable as "fiduciaries with respect to a portion of the
Training Fund delinquency."  *Id.* at PageID #s 99, 112.

Also for the first time, the Memorandum claims that
Hawaii Masons is entitled to relief on the ground that "Vacation
Fund contributions are clearly [ERISA] plan assets" "as monies
which were deducted from employee wages."  *Id.* at PageID # 114.
The Memorandum excerpts 29 C.F.R. § 2510.3-102(a)(1), which
states:

---

[1] At a hearing on October 30, 2017, counsel for Hawaii Masons
attempted to clarify this nonspecific reference to "Defendants."
Counsel stated that this allegation relates to a check that the
Training Fund refunded *only* to Global Stone, but also said that
"questions remain" about whether some of the money was
improperly diverted to Fuchs and Nelson, who, according to
counsel, may be taking draws on the company.

> The assets of [an ERISA] plan include
> amounts (other than union dues) that a
> participant or beneficiary pays to an
> employer, or amounts that a participant has
> withheld from his wages by an employer, for
> contribution or repayment of a participant
> loan to the plan, as of the earliest date on
> which such contributions or repayments can
> reasonably be segregated from the employer's
> general assets.

*Id.; see* ECF 17, PageID # 113. Hawaii Masons says that Vacation Fund benefits are "statutorily deemed plan assets" under this provision. ECF 17, PageID # 114. Citing various affidavits, the Memorandum avers that "Vacation Fund benefits are recognized as part of an employee's wage package," *id*. at PageID # 101 (citing affidavit of Jeff Ornellas), and contributions to that Fund are "included in the employee's gross income on each paycheck and then taxed," *id.* (citing affidavit of Karen Tamashiro). This allegedly means that "when [Global Stone] fails to pay the corresponding contribution to the Vacation Fund, [its employees are] insufficiently credited" when they receive monies from the Fund at the end of the year. *See id*. at PageID #s 101-02 (citing affidavit of Karen Tamashiro). Global Stone's unpaid Vacation Fund contributions therefore allegedly qualify as "amounts withheld from an employee's wages for contributions" under the Code of Federal Regulations. *Id*. at PageID # 113.

Hawaii Masons' Complaint, by comparison, makes only one allegation specifically regarding these Funds: the "Training[] and Vacation & Holiday funds are employee welfare benefit plans." ECF 1, PageID # 2. Aside from this allegation, the Complaint does not explicitly discuss either Fund. *See id.* The Complaint does cite 29 C.F.R. § 2510.3-102 once, but not to allege that Vacation Fund contributions qualify as "amounts withheld from an employee's wages." Instead, the Complaint says:

> [T]rust fund contributions were and are plan assets at all relevant times *as the payment of contributions due* from GLOBAL STONE to the Trust Funds accrued and w[ere] considered as being held in trust by GLOBAL STONE for the benefit of the Trust Funds to whom such contributions are due and payable. *See* 29 Code of Federal Regulations §2510.3-102.

ECF 1, PageID # 10 (emphasis added).

In the Memorandum, Hawaii Masons also requests "leave to amend its Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure" "[t]o the extent the Court finds defects in the allegations" pled. ECF 17, PageID # 117.

### D. Fuchs and Nelson's Reply.

Fuchs and Nelson filed a Reply on October 17, 2017. ECF 18. The Reply disputes that the "'shall' verbiage" in the Trust Agreements and the CBA proves that the parties intended to deem unpaid contributions to be ERISA plan assets. *Id.* at

12

PageID # 314.  It also argues that Hawaii Masons' Memorandum in
Opposition is "inappropriately attempt[ing] to circumvent [a]
pleading defect by seeking to introduce" allegations that are
not in the Complaint.  *Id*. at PageID #s 320-21.

### E.   Other Filings.

On September 20, 2017, Global Stone filed an Answer to
the Complaint that variously admits or denies the allegations
against it.  ECF 14.  On October 19, 2017, Hawaii Masons moved
to strike Fuchs and Nelson's Reply on the ground that it was
filed a day late.  ECF 20.  Fuchs and Nelson opposed the motion.
ECF 22; ECF 24.  At the hearing on October 30, 2017, the court
denied the motion to strike.

### III.     STANDARD OF REVIEW.

Fuchs and Nelson move to dismiss under Rule 12(b)(6)
of the Federal Rules of Civil Procedure.  Dismissal under Rule
12(b)(6) may be based on either: (1) lack of a cognizable legal
theory, or (2) insufficient facts under a cognizable legal
theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699
(9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, a
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if

doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party, and then evaluates whether the complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d at 926.

On a Rule 12(b)(6) motion, the court's review is generally limited to the contents of the complaint. *Sprewell*, 266 F.3d at 988; *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for

summary judgment.  *See Keams v. Tempe Tech. Inst., Inc.*, 110
F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932,
934 (9th Cir. 1996).  The court may "consider certain materials
--documents attached to the complaint, documents incorporated by
reference in the complaint, or matters of judicial notice--
without converting the motion to dismiss into a motion for
summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908
(9th Cir. 2003).

**IV.        ANALYSIS.**

         Hawaii Masons claims that Global Stone and its
officers violated ERISA by failing to make contributions
required by the CBA and the Trust Agreements.  The claims
against Global Stone are not currently before the court.  This
order evaluates Hawaii Masons' claims against company officers
Fuchs and Nelson in their individual capacities.

         The Complaint asserts three claims against Fuchs and
Nelson: breach of fiduciary duty, alter ego liability, and
constructive trust.  The court will discuss these claims in
turn, but first looks to jurisdiction.

         **A.    The Court Has Subject Matter Jurisdiction**.

         The court has subject matter jurisdiction over the
claims against Fuchs and Nelson.  District courts have
jurisdiction over civil actions brought under ERISA by "a
participant, beneficiary, [or] fiduciary."  29 U.S.C. § 1132(e).

15

Hawaii Masons is suing Fuchs and Nelson under ERISA § 409(a), 29 U.S.C. § 1109(a), *see* ECF 1, PageID # 11, and Hawaii Masons, as trustee of the Trust Funds, is an ERISA fiduciary, *see* 29 U.S.C. § 1002(21)(A); ECF 1, PageID # 2.

### B. The Court Dismisses the Fiduciary Claims Against Fuchs and Nelson.

"In enacting ERISA, Congress set out to protect participants in employee benefit plans by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies." *Ariz. State Carpenters Pension Tr. Fund v. Citibank (Ariz.)*, 125 F.3d 715, 719 (9th Cir. 1997) (quoting *Yeseta v. Baima*, 837 F.2d 380, 383 (9th Cir. 1988)). Hawaii Masons claims that Fuchs and Nelson are liable under ERISA § 409(a), 29 U.S.C. § 1109(a), which provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [by ERISA] shall be personally liable." *Id.; see* ECF 1, PageID # 11. Fuchs and Nelson respond that the claim fails as a matter of law, because they are not "fiduciaries with respect to a[n ERISA] *plan*." *See* 29 U.S.C. § 1109(a) (emphasis added). This court agrees that, in the context of the claims before this court, Fuchs and Nelson cannot be said to be ERISA fiduciaries.

### 1. Unpaid Contributions are not "Plan Assets" from which Fiduciary Obligations Flow.

"ERISA defines a fiduciary as, *inter alia*, an individual who 'exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets.'" *Bos (I) v. Board of Trs.*, 795 F.3d 1006, 1008-09 (9th Cir. 2015) (quoting 29 U.S.C. § 1002(21)(A)). Establishing ERISA fiduciary status "requires (1) showing that . . . plan assets are at issue and (2) that the individual defendants exercised authority or control relating to the management or disposition of such assets." *Trs. of S. Cal. Pipe Trades Health & Welfare Tr. Fund v. Temecula Mech.*, *Inc.*, 438 F. Supp. 2d 1156, 1162 (C.D. Cal. 2006) (quoting *NYSA–ILA Med. & Clinical Serv. Fund v. Catucci*, 60 F. Supp. 2d 194, 200 (S.D.N.Y. 1999)), *abrogated on other grounds*, *Bos (I)*, 795 F.3d 1006. Both parties agree that the question of whether "plan assets are at issue" is, at least initially, governed by the rule announced in *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000). *See* ECF 17, PageID # 105; ECF 18, PageID # 312.

In *Cline*, the Ninth Circuit addressed an allegation that entities had "violated their fiduciary duties by failing to deposit funds owed to [an Employee Pension Benefit] Plan

pursuant to [a] CBA."  200 F.3d at 1229.  *Cline* held that

fiduciary duties had not arisen because "[u]ntil the employer

pays the employer contributions over to the plan, the

contributions do not become plan assets over which fiduciaries

of the plan have a fiduciary obligation; this is true even where

the employer is also a fiduciary of the plan."  *Id.* at 1234.

Post-*Cline*, the Ninth Circuit has "consistently held that unpaid

contributions by employers to employee benefit funds are not

plan assets."  *Bos v. Board of Trustees*, 795 F.3d 1006, 1009

(9th Cir. 2015); *see also, e.g.*, *Carpenters Pension Tr. Fund v.

Moxley*, 734 F.3d 864, 867 (9th Cir. 2013) ("[M]oney that is owed

to the Fund is not in the Fund, and is therefore not yet a Fund

'asset.'").

        This case calls for a straightforward application of

the *Cline* rule.  Hawaii Masons alleges that Fuchs and Nelson's

company failed to make certain contributions to the Trust Funds.

*See* ECF 1.  Under *Cline*, Fuchs and Nelson cannot be liable for

the alleged nonpayments because unpaid "contributions do not

become plan assets over which [even] fiduciaries of the plan

have a fiduciary obligation."  *See Cline*, 200 F.3d at 1234.

Hawaii Masons therefore may not pursue fiduciary claims against

Fuchs and Nelson.  *See Hawaii Masons' Health & Welfare Fund v.

Dynamic Interiors, LLC*, 2015 WL 438181, at 5 (D. Haw. Jan. 15,

2015) (finding identical allegations by the Hawaii Masons'

Health and Welfare Fund against officers of Dynamic Interiors insufficient under *Cline*), *report and recommendation adopted*, No. Civ. 14-00434 LEK, 2015 WL 500496 (D. Haw. Feb. 3, 2015).

Hawaii Masons resists this straightforward application of *Cline*. It claims that there is an "exception" to the *Cline* rule under which "unpaid contributions can be considered plan assets when a plan document itself identifies unpaid employer contributions as a plan asset." ECF 17, PageID # 105. In support of this exception, Hawaii Masons cites two Ninth Circuit cases and a regulation. *See id.* (citing 29 C.F.R. § 2510.3-102; *Carpenters Pension Tr. Fund v. Moxley*, 734 F.3d 864 (9th Cir. 2013); and *Trs. of S. Cal. Pipe Trades Health & Welfare Tr. Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156 (C.D. Cal. 2006)).

*Temecula* and *Moxley* discuss whether there is a contractual exception to *Cline*.[2] *Temecula* held that the *Cline* "rule gives way in the face of language in [a] plan document identifying unpaid employer contributions as plan assets." 438 F. Supp. 2d at 1163. In *Moxley*, the Ninth Circuit took note of the *Temecula* court's ruling, but did not decide whether to recognize the exception. 734 F.3d at 869; *see id.* at 867. The

---

[2] The regulation cited is not relevant to whether there is a contractual exception to the *Cline* rule. *See* 29 C.F.R. § 2510.3-102. Instead, as discussed *infra*, it relates to allegations that employer contribution amounts have been withheld from employee wages.

Ninth Circuit *did* decide the issue, however, in *Bos (I) v. Board of Trustees*, 795 F.3d 1006, 1009 (9th Cir. 2015), which repudiated *Temecula* and foreclosed any contractual exception to the *Cline* rule.

In *Bos (I)*, an entity's president, who owed a $500,000 debt to benefit plans under various trust agreements and a CBA, filed for bankruptcy. *Id*. at 1006-08. At issue was a bankruptcy provision that "provide[d] that debts incurred by a debtor due to the debtor's 'fraud or defalcation while acting in a fiduciary capacity' are nondischargeable." *Id.* at 1008 n.2 (quoting 11 U.S.C. § 523(a)(4)). The president insisted that he was not a "fiduciary" under this provision, making his debts dischargeable. *Id.* at 1008. *Bos (I)* analyzed the issue under ERISA, explaining that "[i]f an individual is a fiduciary for purposes of the Employee Retirement Income Security Act . . . the individual is also treated as a fiduciary for purposes of § 523(a)(4)." *Id*. at 1008 (citation omitted). From the ERISA perspective, the question was whether "an employer's contractual requirement to contribute to an employee benefits trust fund makes it a fiduciary of unpaid contributions." *Id.* at 1007. *Bos (I)* held that it did not, expressly "declin[ing] to apply such an exception" to *Cline*. *Id*. at 1009.

Noting a circuit split on the issue, the Ninth Circuit in *Bos (I)* sided "with the view taken by the Sixth and Tenth

Circuits," including the Sixth Circuit's view in an ERISA case involving unpaid contributions. *Id.* at 1010-11 (discussing *Sheet Metal Local 98 Pension Fund v. Airtab, Inc.*, 482 F. App'x 67, 69-70 (6th Cir. 2012)). *Bos (I)* read the Sixth Circuit case as holding "that employers did not have sufficient control over [a] plan's claim for breach of contract to establish ERISA fiduciary status." Because the president was not a fiduciary under ERISA, *Bos (I)* concluded that he also "did not act as a fiduciary under" the bankruptcy code provision in 11 U.S.C. § 523(a)(4). *Id.* at 1012.

Hawaii Masons argues that *Bos (I)* applies only in bankruptcy cases. ECF 17, PageID # 107. Some of *Bos (I)*'s language is indeed specific to the issue of bankruptcy dischargeability. *See* 795 F.3d at 1010 (stating that the Ninth Circuit had previously "declined to apply [a *Cline*] exception, particularly in the context of [11 U.S.C.] § 523(a)(4)"); *id.* at 1010 n.4 ("Notably, [the Tenth Circuit's decision declining to find a contractual *Cline* exception] arose in the context of a Chapter 7 bankruptcy proceeding . . . ."); *id.* at 1008, 1011 (grounding part of the analysis on the bankruptcy requirement that "the debtor must have been a fiduciary prior to his commission of the fraud or defalcation").

The problem with a bankruptcy-only reading of *Bos (I)*, however, is that *the very same panel* hearing a subsequent

21

attorney's fees motion *in the very same case* characterized its analysis as based on ERISA. The panel explained that, in *Bos (I)*, "we concluded that [Bos] was not a fiduciary under ERISA, and thus the Bankruptcy Code's 'fiduciary' exception to discharge could not be applied to him." *Bos (II) v. Bd. of Trustees*, 818 F.3d 486, 489 (9th Cir. 2016). In other words, *Bos (I)* took an antecedent-consequent approach: because, under *Cline*, a contractual contribution requirement does not make an employer a fiduciary of unpaid contributions under ERISA, the contribution requirement does not make an employer a fiduciary under the Bankruptcy Code. *Accord Bos (II)*, 818 F.3d at 489; *see also Bos (I)*, 795 F.3d at 1007, 1008. *Bos (II)*'s description of *Bos (I)* is consistent with *Bos (I)*'s statement of agreement "with the view taken by the Sixth" Circuit in an ERISA unpaid contribution case, and its suggestion that the ERISA framework was appropriate because "[i]f an individual is a fiduciary for purposes of the Employee Retirement Income Security Act . . . the individual is also treated as a fiduciary for purposes of § 523(a)(4)." *See Bos (I)*, 795 F.3d at 1007, 1010-11.

Hawaii Masons does not discuss *Bos (II)* in its Memorandum in Opposition, *see* ECF 18, but at the hearing on October 30, 2017, counsel argued that *Bos (II)*'s reading is unpersuasive because it was (allegedly) not written by the judge

who wrote *Bos (I)*. The court can find no evidence to support this assertion. The decision in *Bos (I)* was written by Judge Diarmuid O'Scannlain, joined by Judges Sandra Ikuta and District Judge Larry Burns. 795 F.3d at 1007. *Bos (II)* was a per curiam order issued by the same three judges. 818 F.3d at 488. Judge O'Scannlain clearly joined in the *Bos (II)* ruling, and this court is at a loss to understand why Hawaii Masons thinks that there were different authors.

*Bos (I)* foreclosed Hawaii Masons' proffered exception to the *Cline* rule in both ERISA and bankruptcy cases. Because unpaid contributions are not "plan assets," Hawaii Masons' fiduciary claims against Fuchs and Nelson must be dismissed.

**2. Even if There Were the *Cline* Exception Described by Hawaii Masons, It Would Not Salvage the Fiduciary Claims.**

Even if the contractual *Cline* exception existed in the Ninth Circuit, it would not help Hawaii Masons. The relevant plan documents *obligate* Global Stone to make payments, but stop short of *defining* plan assets as covering unpaid contributions. This means that any purported *Cline* exception would not apply.

The Ninth Circuit in *Bos (I)* described the *Cline* exception at length, consistently distinguishing between contractual terms obliging payment and terms defining plan assets as including unpaid contributions. For instance, *Bos (I)* understood the contractual *Cline* exception to mean that "a plan

document could convert an unpaid contribution into some type of [ERISA] plan asset . . . [so long as] the language in either the trust agreements or the promissory note . . . were *sufficiently specific* to do so."  795 F.3d at 1011 (emphasis added).

*Bos (I)* explained that California district courts applying this exception had found unpaid contributions to be plan assets only when "the plan document *defined the fund* as including" unpaid contributions.  *Id.* (emphasis added).  In *Temecula*, "the plan document *defined the fund* as including 'money due and owing to the Fund.'"  *Id.* (emphasis added) (quoting *Temecula Mechanical*, 438 F. Supp. 2d. 1156, 1165 (C.D. Cal. 2006)).  And in a similar case, "the plan document *defined the fund* as including 'all Contributions required . . . to be made.'"  *Id.* (emphasis added) (quoting *Bd. of Trs. v. River View Constr.*, No. C-12-03514PJH(DMR), 2013 WL 2147418, at *6 (N.D. Cal. Apr. 17, 2013)).  Bringing home the distinction, *Bos (I)* also discussed an Eleventh Circuit case that specifically

> distinguish[ed] between 'a contractual or legal claim for payment of the money due, in contrast to the actual money due.'  The [Eleventh Circuit] explained that if the plan asset were *merely a contractual right to payment*, the employer would have no authority over the asset so as to establish a fiduciary relationship.  But because the plan document *defined the fund* as including receivable property, the court concluded that the unpaid contributions themselves could become fund assets . . . .

*Id.* at 1009–10 (9th Cir. 2015) (quoting *ITPE Pension Fund v. Hall,* 334 F.3d 1011, 1016 (11th Cir. 2003)).

Hawaii Masons, despite invoking the *Cline* exception, identifies no language in the CBA or the Trust Agreements governing Global Stone that defines plan assets as including unpaid contributions. Instead, Hawaii Masons points to provisions merely obligating Global Stone to make contributions to the Trust Funds. *See* ECF 17, PageID # 96 ("Contractor payments to the various Trust Funds and other Funds[,] as specified in this Agreement *shall be paid* only for hours worked."); *id.* ("Each Contractor *shall participate* in the Hawaii Masons Health and Welfare Trust Fund"); *id.* ("Contractor contributions to the various Funds as specified and provided for above *shall be paid* . . . by the 20th day of the month"); *id.* at PageID # 97 ("[T]he parties have agreed that such contributions *shall be payable* to and deposited in the Masons' Health and Welfare Fund"); *id.* at PageID # 98 ("Each Employer *shall pay* contributions to the Hawaii Masons' Welfare Fund in accord with the terms of the Labor Agreement"); *id.* ("Every Employer who participates in the Masons' Welfare Fund *shall* be bound by this Agreement").[3]

_____

[3] The Complaint refers to the CBA and the Trust Agreements. *See* ECF 1, PageID #s 3, 5. However, those documents are not attached to the Complaint or expressly incorporated by reference. It is not entirely clear that express provisions not

These provisions do not echo the provision that led the *Temecula* court to apply the *Cline* exception. *See* 438 F. Supp. 2d at 1165 ("[T]he assets of this Trust Fund *consist of* . . . Contributions and payments to or due and owing to the Trustees . . . ." (emphasis added)).

If the mere presence of provisions mandating contributions were sufficient, the *Cline* exception would swallow the rule. But courts applying *Cline* have suggested no inclination to so weaken the rule. *See, e.g.*, *ITPE Pension Fund v. Hall,* 334 F.3d 1011, 1013 (11th Cir. 2003) ("The proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise."). Instead, courts have applied the *Cline* exception only when the agreements expressly define "plan assets" as including unpaid contributions. *See, e.g.*, *ITPE Pension Fund,* 334 F.3d at 1013, 1015 (finding language too ambiguous to apply the exception; the

---

quoted in the Complaint are properly before this court on the present motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a court may examine "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment"). This court nevertheless discusses those provisions here because what their language is does not appear to be in dispute. Moreover, converting the present motion to dismiss to a summary judgment motion disadvantages Hawaii Masons, the very party that quotes the language in its Memorandum in Opposition. Conversion could well affect Hawaii Masons' opportunity to amend the Complaint.

agreement provided that the "terms 'Pension Fund' or 'Fund' shall mean all property of every kind *held* or *acquired* under the provisions of this instrument" (citation omitted)); *Temecula*, 438 F. Supp. 2d at 1165 (finding the exception applicable when an agreement "ma[de] clear that the monies composing the Fund include those that are 'due and owing' from 'Employers'"); *Trs. of Nat'l. Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 407, 411 (E.D. Pa. 2001) (discussed in *Temecula*) (finding the exception applicable when the agreement provided that the "Trust Fund *shall consist of* (a) such sums of money as *shall be paid to* [the plan] by the Employers" (first emphasis added) (alteration in original)).

Here, by contrast, the only excerpted provision "defining" a fund does not expressly include unpaid contributions. *See* ECF 17, PageID # 97 ("The Masons' Welfare Fund shall consist of all contributions, investments made and held by the Trustees, income from said investments, and any other property received and held by the Trustees to carry out the purposes herein." (emphasis omitted)).

In sum, the excerpts Hawaii Masons relies on fall short of what *Bos (I)* understood the *Cline* exception to require: a "sufficiently specific" "plan document defin[ing] the fund as including" unpaid contributions. 795 F.3d at 1011. Even if

there were a contractual *Cline* exception in the Ninth Circuit, it would not apply here.

### 3. The Fiduciary Claims Also Fail Because the Complaint's Allegations Are Conclusory.

The Complaint's fiduciary claims fail for an additional reason: there are no factual allegations, only conclusory allegations, regarding Fuchs and Nelson's purported control over plan assets. ECF 15-2, PageID # 79.

As noted, establishing ERISA fiduciary status "requires (1) showing that . . . plan assets are at issue and (2) that the individual defendants exercised authority or control relating to the management or disposition of such assets." *Trs. of S. Cal. Pipe Trades Health & Welfare Tr. Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1162 (C.D. Cal. 2006) (quoting *NYSA–ILA Med. & Clinical Serv. Fund v. Catucci*, 60 F. Supp. 2d 194, 200 (S.D.N.Y. 1999)), *abrogated on other grounds by Bos (I)*, 795 F.3d 1006.

Hawaii Masons' Complaint is devoid of nonconclusory factual allegations regarding the "discretionary control" element. The only allegation on the issue provides: "Individual Defendant [i.e. Fuchs or Nelson] is a fiduciary under ERISA because s/he exercised authority or control respecting management or disposition of plan assets." ECF 1, PageID # 10. Hawaii Masons has "failed to present any detailed statement of

what actions occurred," *Cline v. Indus. Maint. Eng'g &
Contracting Co.*, 200 F.3d 1223, 1233 (9th Cir. 2000), and its
conclusory allegation is insufficient to defeat Fuchs and
Nelson's motion to dismiss, *see Sprewell v. Golden State
Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Syntex Corp. Sec.
Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). *Accord Hawaii Masons'
Health & Welfare Fund v. Dynamic Interiors, LLC*, No. CIV. 14-
00434 LEK, 2015 WL 438181, at *5 (D. Haw. Jan. 14, 2015)
(deeming "conclusory" the identical allegation by Hawaii Masons'
Health & Welfare Fund that a defendant had "exercised authority
or control over the disposition of plan assets"), *report and
recommendation adopted*, No. CIV. 14-00434 LEK, 2015 WL 500496
(D. Haw. Feb. 3, 2015).

> **4.    Hawaii Masons' Most Recent Allegations Do
> Not Rescue Any Fiduciary Claims.**

Hawaii Masons argues in the alternative that a
regulation independently supports some of its fiduciary claims.
*See* ECF 17, PageID # 113.  In 29 C.F.R. § 2510.3-102, ERISA
"plan assets" are defined to include amounts withheld from an
employee's wages for contributions, stating in relevant part:

> The assets of the plan include amounts
> (other than union dues) that a participant
> or beneficiary pays to an employer, or
> amounts that a participant has withheld from
> his wages by an employer, for contribution
> or repayment of a participant loan to the
> plan, as of the earliest date on which such
> contributions or repayments can reasonably

> be segregated from the employer's general
> assets.

*Id.* § 2510.3-102(a)(1). In its Memorandum in Opposition, Hawaii Masons argues that this regulation provides "a statutory basis to establish that Defendants had control over [some] plan assets and are therefore fiduciaries under ERISA." ECF 17, PageID # 100. Attaching various affidavits, Hawaii Masons avers that Global Stone includes "Vacation Fund Benefits" "in [its] employee's gross income on each paycheck," but "insufficiently credit[s]" its employees by later underpaying its contribution to the Vacation Fund. ECF 17, PageID #s 101-102 (citing affidavits of Karen Tamashiro and Jeff Ornellas). According to Hawaii Masons, it is entitled to some relief "because Vacation Fund contributions are clearly plan assets" under 29 C.F.R. § 2510.3-102(a)(1) "as monies which were deducted from employee wages." ECF 17, PageID # 114.

These allegations and affidavits regarding the Vacation Fund are not found within the four corners of the Complaint. *See* ECF 1. Unlike the uncontested language in the CBA and Trust Agreements, these matters cannot be considered without converting the motion to dismiss into a motion for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). The court declines to make that conversion

here and therefore does not reach Hawaii Masons' new Training Fund argument.

Another argument regarding an alleged "Training Fund delinquency," ECF 17, PageID # 112, fails for the same reason. In the Memorandum in Opposition but not in the Complaint, Hawaii Masons avers that "Defendants" "are in possession" of assets "which were actually paid to the Training Fund," and which "should be considered plan assets, giving rise to a fiduciary duty." ECF 17, PageID #s 99, 112, 113 (citing affidavit of Karen Tamashiro); *see* ECF 1 (containing no such allegations). The court will not consider these recent claims and allegations.

## C. The Court Dismisses the Alter Ego Claims as Conclusory.

Defendants Fuchs and Nelson insist that the alter ego allegations, much like the fiduciary duty allegations, are "conclusory and contain no factual substance." ECF 15, PageID # 80. The court agrees and dismisses the alter ego claims.

The Complaint asserts that "at all relevant times, Global Stone was the alter ego and/or the mere instrumentality of [Fuchs and Nelson]," and thus Fuchs and Nelson are liable for any unpaid contributions "as a matter of equity and fairness." ECF 1, PageID #s 12, 13. The Complaint provides no specific factual allegations in support of this assertion. Instead, it

lists "factors," alleging that "all or some" of them are

"relevant":

a) Undercapitalization
b) Failure to observe corporate formalities
c) Absence of corporate records
d) Insolvency of corporation at time of transaction
e) Siphoning off of funds by the dominant shareholder(s)
f) Shareholders guarantying [sic] corporate liabilities in their individual capacities
g) Nonfunctioning officers or directors
h) Lack of officers or directors
i) Failure to issue stock
j) Absence of consideration for stock
k) Corporation is a facade of the operation of the dominant shareholder(s)
l) Corporation's inability to meet payroll and other obligations
m) Commingling of funds or assets
n) Stripping the corporation of assets in anticipation of litigation
o) Use of the corporate shell to advance purely personal ends
p) Treatment of corporate assets as personal assets
q) Cash advances to shareholders/officers/directors
r) Advances to corporation by shareholders
s) Undocumented loans
t) Use of individual rather than corporate checks and
u) Fraud and misrepresentation with respect to Trust Fund plan assets of which [Fuchs and/or Nelson] was a fiduciary for the employees covered by the Bargaining Agreement and trust agreements.

ECF 1, PageID #s 12-13.

Later, the Complaint lists other factors, "all or some" of which are allegedly "relevant" to the alter ego claim:

a) Nonpayment of trust fund obligations by Global Stone;
b) Violation of statute or public policy;
c) Misrepresentations by Global Stone and/or members/officers/directors; and/or
d) The acting principals of Global Stone[] were responsible for and ratified administrative decisions exercised on behalf of Global Stone, were vested with the authority to exercise discretionary control over the management of the financial responsibilities and business affairs of GLOBAL STONE, and exercised discretionary control over the management of the financial responsibilities and business affairs of GLOBAL STONE including, but not limited to, authorizing and tendering the payment of contributions and withholdings due to the funds pursuant to the Bargaining Agreement and trust fund agreements; and/or
e) The acting principals of Global Stone intentionally misrepresented to Trust Funds the amount of hours worked by its employees by failing to report and/or transmit contributions in a timely fashion to Trust Funds.

ECF 1, PageID # 14 (emphases omitted).

Given the "all or some" language, the court and Defendants cannot tell what is really at issue. Does Hawaii Masons submit that Global Stone's veil should be pierced based only on "undercapitalization," or do *all* of the enumerated factors apply? The conclusory list is not supported by any factual allegations. *See* ECF 1, PageID #s 12-14. In light of

33

the conclusory and nonspecific allegations, Hawaii Masons' alter
ego claim is dismissed.

**D.    The Court Dismisses the Constructive Trust Claim.**

The Complaint supports its constructive trust claim
with a single allegation: "[a]s a result of" Fuchs and Nelson's
"breach of their fiduciary duties of care and loyalty to the
participants and beneficiaries of Trust Funds as alleged herein,
plan assets have been improperly diverted from Trust Funds to
Global Stone and/or" Fuchs and Nelson.  ECF 1, PageID # 11.
Therefore, says Hawaii Masons, a "constructive trust should be
imposed upon the assets of" Fuchs and Nelson.  *Id.* at PageID
# 12.

The court has already dismissed the fiduciary claims
against Fuchs and Nelson as a matter of law and because the
supporting allegations are conclusory.  The court agrees with
Fuchs and Nelson that, on the present state of the pleadings,
"there can be no legal basis for the Court to order a
constructive trust on the[ir] personal property."  *See* ECF 15-2,
PageID # 80.

**E.    The Court Grants Hawaii Masons' Request for Leave
to Amend.**

Hawaii Masons requests leave to amend "to the extent
the Court finds defects in the allegations" pled.  ECF 17,
PageID # 117 (invoking Fed. R. Civ. P. 15(a)(2)).  Leave to

amend "shall be freely given when justice so requires." Fed. R.
Civ. P. 15(a). This policy is "applied with extreme
liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d
1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found.
Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). A court
considers the following five factors: "(1) bad faith; (2) undue
delay; (3) prejudice to the opposing party; (4) futility of
amendment; and (5) whether the plaintiff has previously amended
his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir.
2004). "[I]t is the consideration of prejudice to the opposing
party that carries the greatest weight." *Eminence Capital, LLC
v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). That
said, "[f]utility of amendment can, by itself, justify the
denial of a motion for leave to amend." *U.S. ex rel. Lee v.
SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)
(citation omitted). "Absent prejudice, or a strong showing of
any of the remaining . . . factors, there exists a *presumption*
under Rule 15(a) in favor of granting leave to amend." *Eminence
Capital*, 316 F.3d at 1052.

Hawaii Masons has not previously amended its
complaint, and the court finds no indication of bad faith or
undue delay in the timing of Hawaii Masons' request.
Additionally, Fuchs and Nelson did not oppose Hawaii Masons'
request for leave to amend, *see* ECF 15; ECF 18, and so did not

carry the "burden of showing prejudice." *DCD Programs, Ltd. v.*
*Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

The court grants Hawaii Masons' request for leave to
amend consistent with this order. Claims precluded by this
order should not be reiterated without adjustments that address
the rulings made here.

**F.    The Court Denies Fuchs and Nelson's Request for
       Attorneys' Fees.**

Fuchs and Nelson request attorneys' fees and costs,
arguing that Hawaii Masons' counsel "should have known that in
light of [three recent District of Hawaii decisions] . . . the[]
verbatim allegations and claims in the present case would fail
as a matter of law." ECF 15-2, PageID # 81. This is especially
so, say Fuchs and Nelson, because "counsel that now represents
[Hawaii Masons] was the same counsel that represented the
plaintiffs in each of these [three prior] cases." ECF 15-2,
PageID #s 71-72.

The request for fees is denied. The other rulings in
this district are not binding here, and Hawaii Masons was free
to raise its arguments in the present case. Moreover, this
court has given Hawaii Masons leave to amend it Complaint, so
that which party will ultimately prevail has not yet been
determined. Finally, Defendants have not complied with Local
Rule 54.3, which requires, among other things, a description of

the work performed by counsel and a tabulation of the time required to perform the work.  Any subsequent motion for attorneys' fees must comply with Local Rule 54.3.

## V.  CONCLUSION.

For the foregoing reasons, the court GRANTS Fuchs and Nelson's Motion to Dismiss, GRANTS Hawaii Masons' request for leave to amend, and DENIES without prejudice Fuchs and Nelson's request for attorneys' fees.

If Hawaii Masons wishes to file an Amended Complaint asserting new claims against Fuchs and Nelson, it must do so by December 4, 2017.

Claims against Global Stone remain in issue.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 13, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Hawaii Masons' Pension Trust Fund, et al., v. Global Stone Hawaii, Inc., et al., Civ. No. 17-00289 SOM-RLP; ORDER GRANTING DEFENDANTS RENATO FUCHS AND DANIEL NELSON'S MOTION TO DISMISS; DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES; AND GRANTING PLAINTIFF HAWAII MASONS' REQUEST FOR LEAVE TO AMEND.